

FILED

SEP 25 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHELLEY FEDERICO, et al.,

     Plaintiffs,

     v.                               Civil No. 2:12cv80

LINCOLN MILITARY HOUSING, LLC, et al.,

     Defendants.

## OPINION AND ORDER

This consolidated action involves mold-related contract and tort claims by several military families against the Lincoln Defendants, which allegedly manage and operate the Tidewater-area military housing communities in which the tenant-plaintiffs resided, and various vendors who allegedly provided repair, remediation and cleaning services in connection with the tenant-plaintiffs' complaints of mold and water damage in their apartments. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.[1] In this action, the plaintiffs seek damages for personal injury and property damage based on various theories of liability, including breach of contract, violation of the Virginia Residential Landlord Tenant Act, Va. Code §§ 55-248.2 et seq. ("VRLTA"), negligence per se based on standards imposed by the VRLTA, negligence per se based on standards imposed by the Virginia Maintenance Code, common law negligence, and common law fraud.

The matter is now before the Court on the Lincoln Defendants' various motions to dismiss or for judgment on the pleadings pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 12(c) of the

---

[1] The Court has previously determined the existence of federal enclave jurisdiction with respect to the military housing communities involved in this consolidated action. See Federico v. Lincoln Mil. Hous., 901 F. Supp. 2d 654, 676 (E.D. Va. 2012); see also 28 U.S.C. § 1331. Many of the individual cases in this consolidated action involve diversity jurisdiction as well. See 28 U.S.C. § 1332. All of the complaints were initially filed in state court and subsequently removed to this Court by the defendants pursuant to 28 U.S.C. §§ 1441 and 1446.

Federal Rules of Civil Procedure. A preliminary question for a number of the claims is whether Lincoln Defendants are entitled to derivative governmental immunity. For the reasons set forth herein, the motions shall be **GRANTED** in part and **DENIED** in part, and portions of the consolidated action identified hereinafter shall be **DISMISSED** for failure to state a claim upon which relief can be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs in this consolidated action are military members and spouses who leased apartments in military housing communities managed and operated by the Lincoln Defendants. Altogether, they have brought eight separate lawsuits for personal injury and property damage, which have been joined together in this consolidated action following removal from state court. The lead case in this consolidated action, Federico I (Case No. 2:12cv80), was brought by Shelley Federico, both individually and jointly with her husband, Joe Federico, a United States Marine, who lived together with their minor child in military housing beginning in October 2010. A second case, Federico II (Case No. 2:12cv596), was brought by Joe Federico individually. A third case, Chan I (Case No. 2:12cv580), was brought by Monica Chan, both individually and jointly with her husband, Christopher Chan, an enlisted member of the United States Navy, who lived together with their three minor children in military housing beginning in October 2010. A fourth case, Chan II (Case No. 2:12cv581), was brought by Christopher Chan individually. A fifth case, Brandsema (Case No. 2:12cv582), was brought by Abbee Brandsema, both individually and jointly with her husband, John Brandsema, a United States Navy Petty Officer, who lived together with their minor child in military

housing beginning in September 2010. A sixth case, <u>Harding</u> (Case No. 2:13cv233), was brought by Nicole Harding individually, who lived together with her husband, an enlisted member of the United States Navy, and their three minor children in military housing beginning in June 2009. A seventh case, <u>Sulligan</u> (Case No. 2:13cv294), was brought by Meagan Sulligan, both individually and jointly with her husband, George Sulligan, an enlisted member of the United States Army, who lived together with their three minor children in military housing beginning in May 2010. An eighth case, <u>Delorey</u> (Case No. 2:13cv359), was brought by Rachael Delorey, both individually and jointly with her husband, Theo Delorey, a United States Navy Hospital Corpsman, and their two minor children in handicap accessible military housing beginning in June 2010.

As alleged by the plaintiffs, defendant Lincoln Property Company ("LPC") is an international property acquisition and management company headquartered in Texas that allegedly manages 31,000 military homes nationwide. Defendant Lincoln Military Housing, LLC ("LMH") is an affiliated company that allegedly manages and operates more than 4,000 military housing units in the Tidewater area; under the Department of Defense's Military Housing Privatization Initiative ("MHPI"), LMH and its subsidiaries allegedly manage and operate the military housing under a fifty-year lease program. Defendant Mid-Atlantic Military Families, LLC ("Mid-Atlantic") is a subsidiary of Lincoln Family Communities, LLC ("LFC"), an affiliate or subsidiary of LMH; Mid-Atlantic is identified as the owner/landlord on the military housing leases with each of the plaintiffs. Defendant Lincoln Property Company Property Management, Inc. ("LPCPM") is an authorized agent for Mid-Atlantic; it manages the performance of all maintenance activities for the military

housing occupied by the plaintiffs. Finally, the two most recently removed complaints, <u>Sulligan</u> and <u>Delorey</u>, have alleged fraud claims against Stephanie Dozier (known to the <u>Sulligan</u> plaintiffs only as "Stephanie"), a property manager employed by the Lincoln Defendants. These affiliated defendants are referred to collectively in this Opinion and Order as the "Lincoln Defendants."

In support of their motion for dismissal pursuant to Rule 12(b)(1), the defendants have submitted a declaration by Kim McCormick, General Counsel for LPC, in which she has addressed the corporate structure of Mid-Atlantic, and the relationship between the Lincoln Defendants and the United States Navy. In this declaration, Ms. McCormick has stated that Mid-Atlantic was formed in August 2005 as a public-private venture ("PPV") authorized under the MHPI, with LFC and the Navy as its sole members. The defendants previously filed, under seal, copies of the applicable ground lease with respect to the military housing communities at issue in these cases, the operating agreement under which Mid-Atlantic took ownership of the residential units located on the property conveyed by the ground lease, and the property management agreement under which LPCPM was retained to manage the military housing properties. See generally <u>Federico</u>, 901 F. Supp. 2d at 658–61 (describing the corporate structure of Mid-Atlantic and the general terms of the ground lease, operating agreement, and property management agreement).

As alleged by the plaintiffs, defendants Bradley Perkins, Inc. t/a Elite Construction; Belfor USA Group, Inc. d/b/a Belfor Property Restoration; Carpet World of Virginia, Inc. d/b/a Carpet World; Environmental Restorations Inc. d/b/a ServePro of Chesapeake; and National Restoration, Inc. d/b/a Peerless Carpet Care and Restoration Services of Virginia Beach are vendors retained by

the Lincoln Defendants to perform mold remediation services in response to the plaintiffs' reports of moisture damage and possible mold in their residences. Several of the complaints also name unidentified vendors as John Doe defendants. These vendors are not party to the instant motions.

Each of the eight complaints at issue in this consolidated action involves mold-related contract and tort claims against the Lincoln Defendants, which allegedly manage and operate the Tidewater-area military housing communities in which the tenant-plaintiffs resided. The eight complaints also allege common law negligence and fraud claims against the various vendors who allegedly provided repair, remediation, and cleaning services in connection with the tenant-plaintiffs' complaints of mold and water damage in their apartments. Several, but not all, of the complaints allege fraud claims against the Lincoln Defendants and various vendors.

The defendants have filed Rule 12(b) motions to dismiss the Federico I and Harding complaints and Rule 12(c) motions for judgment on the pleadings with respect to the other six complaints. Each of these motions has been fully briefed by both sides. The Court held oral argument on these motions on May 8, 2013. The matter is now ripe for a decision.

## II. MOTION TO DISMISS STANDARD

With respect to one of the consolidated cases, the defendants have filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a challenge to its subject matter jurisdiction, a district court may look beyond the

- 5 -

pleadings without converting the proceeding to a motion for summary judgment. Id. "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

With respect to all eight of these consolidated cases, the defendants have filed dispositive motions seeking dismissal of some or all of the plaintiffs' claims for failure to state a claim upon which relief can be granted. In some of the cases, the defendants have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in other cases, the defendants have filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The only difference between these two procedural vehicles for the disposition of claims is one of timing, not of substance. Whereas Rule 12(b)(6) authorizes a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted" before filing a responsive pleading, Rule 12(c) authorizes the defendant to move for judgment on the pleadings on the very same grounds "[a]fter the pleadings are closed—but early enough not to delay trial." Compare Fed. R. Civ. P. 12(b)(6) with Fed. R. Civ. P. 12(c), (h)(2)(B). In practice, the distinction is immaterial, as the applicable standard of review is the same in either event. See Edwards v. City of Goldsboro, 178 F.2d 231, 243 (4th Cir. 1999).

In considering motion to dismiss for failure to state a claim upon which relief may be granted, the plaintiff's complaint is to be construed in the "light most favorable to the plaintiff." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). The defendant has the burden of showing that no claim has been stated. See Edwards, 178 F.3d at 244 ("[A] Rule

- 6 -

12(b)(6) motion should only be granted if, after accepting all well pleaded allegations in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.").

"To survive dismissal, the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As the Fourth Circuit has explained,

> The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." It requires the plaintiff to articulate facts, when accepted as true, that "show" the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'"

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557). Nevertheless, when considering a motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. Twombly, 550 U.S. at 563.

In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308, 322 (2007).

### III. ANALYSIS

#### A. Derivative Governmental Immunity

With respect to the Federico I complaint alone, the defendants have moved to dismiss the

- 7 -

plaintiffs' tort claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.[2] In particular, the defendants assert a defense of derivative governmental immunity pursuant to the doctrine enunciated by the Supreme Court of the United States in the case of Yearsley v. W.A. Ross Construction Company, 309 U.S. 18 (1940), and its progeny. However, as the record now stands, the plaintiffs have met their burden to show that such immunity is not a bar to their suit because the defendants' alleged actions were not the result of a discretionary function.

In general, the United States Government enjoys sovereign immunity from suit except where it has waived that immunity. The Federal Tort Claims Act ("FTCA") waived that immunity in regards to certain tort suits, but, most relevant to the instant case, not when the tort is based on the performance of a "discretionary function or duty." 28 U.S.C. § 2680(a). The definition of a "discretionary function" is not a simple matter, see generally Angle v. United States, 931 F. Supp. 1386, 1391–96 (W.D. Mich. 1994), but the Supreme Court has laid out a two-part analysis in Berkovitz v. United States, 486 U.S. 531 (1988), to determine when it is applicable. First, "conduct cannot be discretionary unless it involves an element of judgment or choice" on behalf of the person or agency performing it. Berkovitz, 486 U.S. at 536. Second, where there is some element of judgment or choice exercised, the exception "protects only governmental actions and decisions based

---

[2] There is some authority that derivative governmental immunity is not technically a jurisdictional matter. See Ackerson v. Bean Dredging LLC, 589 F.3d 196, 207–08 (5th Cir. 2009) ("Based on the Supreme Court's actions in Yearsley, we hold that concluding Yearsley is applicable does not deny the court of subject-matter jurisdiction."); In re Oil Spill by the Oil Rig Deepwater Horizon, MDL No. 2179, 2011 WL 4575696, at *3 n.6 (E.D. La. Sept. 30, 2011) (denying Rule 12(b)(1) motions because "derivative immunity will not divest a court of subject matter jurisdiction"). Assuming arguendo that it is a jurisdictional matter, though, plaintiffs have still met their heightened pleading burden at this stage.

on considerations of public policy." Id. at 537. If a decision is "grounded in social, economic, and political policy," it is discretionary. Id.

In Angle v. United States, the Air Force made the decision that rather than spending approximately $51 million to sample all of its housing units, or remove all lead-based paint in its housing at a cost of $900 million, for which there was no money budgeted, they would instead address the issue by prohibiting the use of lead-based paint in the future. 931 F. Supp. at 1390, 1396–97. The Air Force's choice to handle the threat of lead-based paint in its housing in a manner different than that which the plaintiffs in that case desired was determined to be a discretionary decision made in light of "social, economic, or political policy." Id. at 1397.

By contrast, there are other choices by government agents that are of such a nature that they do not fall within the FTCA's discretionary function exception. It is "universally acknowledged" that "the discretionary function exception never protects against liability" for a government employee's negligent driving despite the fact that safe driving requires some level of discretion. United States v. Gaubert, 499 U.S. 315, 336. Similarly, even though the choice to operate a lighthouse is discretionary, the Coast Guard was nonetheless found to be liable under the FTCA for its employee's negligent failure to discover a failure of the light and to repair the same. Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955).

Derivative governmental immunity applies to government contractors who perform a discretionary function within the scope of a valid government contract. Mangold v. Analytic Services, Inc., 77 F.3d 1442, 1448 (4th Cir. 1996) (holding that derivative governmental immunity

- 9 -

applies "to the extent that this case involves a discretionary governmental function which has been delegated to the private sector"); Butters v. Vance Int'l, Inc., 225 F.3d 462, 466 (4th Cir. 2000) (noting that it is "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity"). Contractors are protected to the same extent as the Government when they exercise appropriately delegated discretionary power. Mangold, 77 F.3d at 1447–48 ("If absolute immunity protects a particular governmental function, no matter how many times or to what level that function is delegated, it is a small step to protect that function when delegated to private contractors . . . ."). Thus in the instant case, the question is whether defendants' alleged actions are protected by the FTCA's discretionary function exception via derivative governmental immunity.

Plaintiffs have pled sufficient facts to support their claim that the defendants are not entitled to derivative governmental immunity, and thus that this Court has jurisdiction over the plaintiffs' tort claims. The defendants' actions do not qualify as discretionary under Berkovitz because they do not satisfy the second prong of that case's test.

The first prong of the Berkovitz analysis is clearly met. Defendants were not given clear directions on how to protect against and remediate mold problems. All parties agree that the defendants' contract to oversee the properties at issue in this case was authorized under the MHPI, which allows branches of the Armed Forces to establish PPVs to operate and manage military housing. 10 U.S.C. §§ 2871–2885. To improve housing quality, the branches of the Armed Forces may lease residential units "suitable for use as military family housing or military unaccompanied

- 10 -

housing." Id. § 2874(a). This goal inherently calls for a great deal of choice and judgment.

The second prong of the Berkovitz analysis, however, is not met. Plaintiffs allege a variety of breaches of applicable state law, as well as that defendants were not compliant with their contractual obligations. The plaintiffs claim that these alleged violations of law and contract stem not from a designated policy but from individuals failing to perform their jobs with proper care. In other words, the defendants' actions allegedly were not grounded in public policy and thus cannot be classified as discretionary.

In the instant case, defendants' alleged actions do not qualify as discretionary. While the plaintiffs in Angle alleged that their harms were the product of a negligent decision affecting thousands of housing units, the plaintiffs in this case allege that their injuries stem from a failure to provide safe housing free of significant mold buildup, unpleasant odors, and extensive water damage in a specific housing unit that had been brought to defendants' attention, as well as from negligent or nonexistent repairs. None of the concerns in Angle about large-scale budget issues or how to keep thousands of families safe from a potential but uncertain danger are present in this case. Rather, it is simply a question of whether defendants were negligent in repairing a particular housing unit when the dangers it posed became known. If Lincoln Defendants had chosen to combat mold infestations with a plan for providing safe housing within the logistical constraints of their situation and plaintiffs alleged that that general plan was insufficient to protect them from harm, then Lincoln Defendants would be in an analogous position to the Angle defendants. Here, however, the defendants are not alleged to have negligently weighed competing values incorrectly, but to have failed to react to an

immediate and manifest danger. Thus the actions at issue here are more akin to the negligence of a careless government driver or inept lighthouse operator than to the Air Force's policy decision in Angle. See Gaubert, 499 U.S. at 336; Indian Towing Co., 350 U.S. at 69.

For these reasons, the defendants here allegedly were not performing a discretionary function within the scope of their contract with the Government and thus are not eligible for derivative governmental immunity on the record as it now stands. Accordingly, the Court will deny the defendants' motion to dismiss certain tort claims raised in the Federico I complaint pursuant to Rule 12(b)(1), without prejudice to their asserting a derivative governmental immunity claim again in later proceedings if a sufficient basis therefor can be shown.

### B. The Virginia Residential Landlord Tenant Act

In Count I of the Federico I, Chan I, Brandsema, Sulligan, and Delorey complaints, the plaintiffs assert a claim for damages for the Lincoln Defendants' violation of the VRLTA. The defendants have moved to dismiss or for judgment on the pleadings for failure to state a claim on the ground that the VRLTA does not authorize the recovery of monetary damages for personal injury or property damage.

Under the VRLTA, a landlord has an express obligation to "[m]aintain the premises in such condition as to prevent the accumulation of moisture and the growth of mold, and to promptly respond to any notices from the tenant" regarding moisture accumulation or visible mold. Va. Code § 55-248.13(A)(5). If the landlord fails to meet its obligations under § 55-248.13(A), "the landlord shall only be liable for the tenant's actual damages proximately caused by the landlord's failure to

- 12 -

exercise ordinary care." Id. § 55-248.13(B); see generally Restatement (Second) of Prop.: Landlord and Tenant § 10.2 (1977) (outlining the scope of damages available to a tenant for a landlord's breach of lease); Bus. Bank v. F.W. Woolworth Co., 421 S.E.2d 425, 427 (Va. 1992) (citing this section of the Restatement with approval).

Monetary damages for personal injury are not authorized under the VRLTA. Isbell v. Commercial Inv. Assocs., Inc., 644 S.E.2d 72, 77–78 (Va. 2007). The Supreme Court of Virginia has unequivocally held that "the VRLTA imposed contractual duties on landlords but it did not impose a tort duty on landlords with regard to responsibility to maintain and repair leased premises under the enjoyment and control of the lessee." Steward v. Holland Family Props., LLC, 726 S.E.2d 251, 255 (Va. 2012). "[I]f a landlord fails to materially comply with the health and safety provisions of the [VRLTA], Sections 55-248.21 and 55-248.40 provide limited relief, allowing a tenant to terminate the lease agreement, seek equitable relief, and obtain damages incidental to that equitable relief." Sanders v. UDR, Inc., No. 3:10-CV-459, 2010 WL 3927804, at *5 (E.D. Va. Oct. 4, 2010) (citing Isbell, 644 S.E.2d at 77–78). This relief includes the recovery of reasonable attorney fees, "unless the landlord proves by a preponderance of the evidence that the landlord's actions were reasonable under the circumstances." Va. Code § 55-248.21.

Subsequent to the Isbell decision, the VRLTA was amended, effective July 1, 2008, to impose certain additional obligations upon a landlord with respect to mold conditions. Under the amended VRLTA, a landlord is expressly obligated to "perform mold remediation in accordance with professional standards," to provide temporary accommodations to the tenant while mold

- 13 -

remediation is performed, and to pay all costs of the mold remediation, provided the mold condition is not caused by negligence of the tenant. Va. Code §§ 8.01-226.12(E), 55-248.18:2. The term "mold remediation in accordance with professional standards" is further defined by statute as:

> mold remediation of that portion of the dwelling unit or premises affected by mold, or any personal property of the tenant affected by mold, performed consistent with guidance documents published by the United States Environmental Protection Agency, the United States Department of Housing and Urban Development, the American Conference of Governmental Industrial Hygienists (the Bioaerosols Manual), Standard Reference Guides of the Institute of Inspection, Cleaning and Restoration for Water Damage Restoration and Professional Mold Remediation, or any protocol for mold remediation prepared by an industrial hygienist consistent with said guidance documents.

Va. Code §§ 8.01-226.12(A), 55-248.4.

Accordingly, the motions are granted in part with respect to the recovery of damages for personal injury under the VRLTA. The motions are denied in part and this consolidated action shall proceed to the extent that the plaintiffs seek to recover damages available pursuant to Va. Code §§ 55-248.13, -248.21, and -248.40, reimbursement of any temporary lodging expenses and any mold remediation costs incurred by the plaintiffs available pursuant to Va. Code §§ 8.01-226.12 and 55-248.18:2, and reasonable attorney fees incurred by the plaintiffs available pursuant to Va. Code § 55-248.21.

### C. Breach of Contract

In Count II of the Federico I, Chan I, Brandsema, Sulligan, and Delorey complaints, the plaintiffs assert a claim for economic damages for the Lincoln Defendants' breach of the leases between Mid-Atlantic and each of these plaintiffs. The defendants have moved to dismiss or for

- 14 -

judgment on the pleadings for failure to state a claim, attempting to re-characterize the plaintiffs' breach of contract claims instead as claims for the breach of a common law implied warranty of habitability, which is not recognized under Virginia law. See generally Roche v. Lincoln Prop. Co., 175 Fed. App'x 597, 603 (4th Cir. 2006) ("Virginia does not recognize an implied warranty of habitability between a landlord and a tenant.") (citing Hutton v. Burke & Herbert Bank & Trust Co., 46 Va. Cir. 146, 147 (Va. Cir. Ct. 1998)). The defendants further argue that the plaintiffs have failed to adequately identify the particular provisions of the lease that have been breached.

First, the Court notes that the plaintiffs here have not asserted a warranty of habitability claim, thus the Fourth Circuit's decision in Roche is simply inapposite. The plaintiffs here rely not upon a common law implied warranty of habitability, but upon the defendants' alleged violation of obligations imposed by the VRLTA and incorporated by law into the plaintiffs' lease agreements.

"Under Virginia law, a party claiming breach of contract must establish three elements to prevail: (1) a legally enforceable obligation under a contract, (2) a breach of that obligation, and (3) injury or damage to the plaintiff flowing from that breach." Sanders, 2010 WL 3927804, at *3. The defendants complain that the plaintiffs have not identified any particular lease provisions that have been breached by the defendants, but, as discussed in the previous section, the plaintiffs have specifically alleged that the defendants have failed to "[m]aintain the premises in such condition as to prevent the accumulation of moisture and the growth of mold, and to promptly respond to . . . notices from the tenant" regarding moisture accumulation or visible mold, see Va. Code § 55-248.13(A)(5), and that they have failed to "perform mold remediation in accordance with

- 15 -

professional standards," to provide temporary accommodations to the tenant while mold remediation is performed, and to pay all costs of the mold remediation, <u>see</u> Va. Code §§ 8.01-226.12(E), 55-248.18:2. As this Court has previously held, "[a] landlord entering into a lease agreement subject to the VRLTA assumes the legal duties required in the Act as if they were incorporated into the lease agreement, and a violation of the statute gives rise to a breach of contract action." <u>Sanders</u>, 2010 WL 3927804, at *4. Thus, the plaintiffs have adequately alleged "a legally enforceable obligation under a contract" and "a breach of that obligation." As for the "injury or damage to the plaintiff flowing from that breach," the plaintiffs have expressly limited the requested remedies on their breach of contract claims to economic damages, which are recoverable in contract under Virginia law. <u>See id.</u> They do not seek personal injury damages in their contract claims.

Accordingly, the motions are denied in part and this consolidated action will proceed with respect to the plaintiffs' breach of contract claims for economic damages.

### D. Negligence Per Se Based on the Virginia Residential Landlord Tenant Act

In Count IV of the <u>Federico I</u> complaint and the second of two counts styled "Count III" in the <u>Sulligan</u> complaint, the plaintiffs have asserted a claim of negligence per se based on the VRLTA. In <u>Steward v. Holland Family Properties, LLC</u>, 726 S.E.2d 251 (Va. 2012), the Supreme Court of Virginia unequivocally held that "the VRLTA provides no basis for a negligence per se claim." <u>Id.</u> at 255. Accordingly, the motions are granted in part and the plaintiffs' claims of negligence per se based on the VRLTA are dismissed.

### E. Negligence Per Se Based on the Virginia Maintenance Code

In Count V of the Federico I, Brandsema, Chan I complaints, Count III of the Federico II and Chan II complaints, Count IV of the Sulligan and Delorey complaints, and Count II of the Harding complaint, the plaintiffs have asserted a claim of negligence per se based on alleged violations of the Virginia Maintenance Code, which is part of the Virginia Uniform Statewide Building Code. The defendants have moved to dismiss or for judgment on the pleadings for failure to state a claim on the ground that the Steward decision's holding with respect to negligence per se claims based on the VRLTA is equally applicable to negligence per se claims based on the Virginia Maintenance Code.

To successfully apply the doctrine of negligence per se, a plaintiff must show that (1) the defendant violated a statue enacted for public safety, (2) the plaintiff is a member of the class of persons intended to be protected by the statute, (3) the harm the plaintiff experienced was of the type the statute was designed to protect against, and (4) the statutory violation was the proximate cause of the plaintiff's injury. Schlimmer v. Poverty Hunt Club, 597 S.E.2d 43, 46 (Va. 2004); see also O'Neil v. Windshire Copeland Assocs., L.P., 197 F. Supp. 2d 507, 509 (E.D. Va. 2002). Whether there was a violation of the statute and whether the violation was the proximate cause of the injury are generally issues for the trier of fact. McGuire v. Hodges, 639 S.E.2d 284, 288 (Va. 2007); see also O'Neil, 197 F. Supp. 2d at 509.

As this Court has observed, the VRLTA is not a statute enacted for public safety, but rather for the purpose of simplifying, clarifying, and modernizing the law governing contractual agreements between residential landlords and tenants. Sanders, 2010 WL 3927804, at *6; see also Va. Code § 55-248.3. By contrast, the Building Code—of which the Maintenance Code is part and

- 17 -

parcel—is a "statute enacted to protect health, safety, and welfare," and thus a violation of its provisions may form the basis of a negligence per se claim. See MacCoy v. Colony House Builders, Inc., 387 S.E.2d 760, 763 ("[T]he violation of the Building Code, like any statute enacted to protect health, safety, and welfare, is negligence per se."); see also Sanders, 2010 WL 3927804, at *6 ("Unlike with the VRLTA, violations of the Maintenance Code may, in some circumstances, give rise to a viable negligence per se claim."); O'Neil, 197 F. Supp. 2d at 509 (citing MacCoy and holding that failure to maintain balcony guardrails at height required by building code constituted negligence per se); McGuire, 639 S.E.2d at 288–89 (citing MacCoy and holding that a homeowner could be held liable for violation of a municipal building code that resulted in a child's death).

Accordingly, because the Virginia Maintenance Code applies to the alleged failures to properly maintain the property, the motions are denied in part and this consolidated action will proceed with respect to the plaintiffs' negligence per se claims based on the Virginia Maintenance Code.

### F. Common Law Negligence

In Count III of the Federico I, Brandsema, Chan I, and Delorey complaints, Count I of the Federico II, Chan II, and Harding complaints, and the first of two counts styled "Count III" in the Sulligan complaint, the plaintiffs have asserted a claim of common law negligence against the Lincoln Defendants. In particular, the plaintiffs claim that the Lincoln Defendants failed to disclose known and concealed defects concerning water intrusion and mold contamination prior to the plaintiffs taking possession of their apartments, failed to maintain those portions of the residences

- 18 -

that were outside the control of the tenant-plaintiffs (e.g., windows and exterior surfaces, plumbing), and negligently performed repairs when undertaken.

It is true that, under Virginia common law, "in the absence of fraud or concealment, a landlord has no duty of care to maintain or repair leased premises when the right of possession and enjoyment of the premises has passed to the lessee." Steward, 726 S.E.2d at 254. This includes plumbing fixtures located in the area within the exclusive possession and control of the tenant, notwithstanding any maintenance obligation the landlord might assume by contract. See Hunter-Smith Co. v. Gibson, 89 S.E. 886, 886–87 (Va. 1916); Dudley v. Lewis Shoe Co., 73 S.E. 433, 434–35 (Va. 1912). But it does not include the exterior surfaces or plumbing fixtures that remain in the possession and control of the landlord. See Adams Grain & Provision Co. v. Chesapeake & Ohio Ry. Co., 88 S.E. 171, 172 (Va. 1916). The plaintiffs here have expressly limited their claim of negligent maintenance to areas allegedly outside of their exclusive possession and control, and construing the factual allegations of the complaints in the light most favorable to the plaintiffs, the plaintiffs have stated a viable claim of common law negligence with respect to the defendants' alleged failure to maintain those portions of the residences that remain allegedly outside the exclusive possession and control of the tenant-plaintiffs.

Under Virginia law, it is also true that "[a] landlord who makes repairs to leased property has a common law duty not to make those repairs in a negligent manner and is liable for injuries sustained as a result of negligent repair." Steward, 726 S.E.2d at 257. Each of the complaints contains detailed allegations that the defendants or their agents undertook to perform a variety of

- 19 -

repairs or other remedial actions with respect to the plaintiffs' complaints about moisture intrusion and possible mold contamination, and that the defendants or their agents failed to exercise ordinary care in doing so. Cf. Sales v. Kecoughtan Housing Co., 690 S.E.2d 91, 93–94 (Va. 2010) (holding that a landlord failing to fix a preexisting mold condition after undertaking to do so can serve as the basis for a negligent repairs claim).

The defendants suggest that the plaintiffs have failed to adequately allege that their alleged negligence proximately caused the plaintiffs' personal injuries, citing Roche v. Lincoln Property Co., 278 F. Supp. 2d 744 (E.D. Va. 2003). But that case involved the disposition of a motion in limine raising a Daubert challenge to a medical expert slated to testify at trial that mold in the plaintiffs' apartment was the proximate cause of their respiratory and other medical problems. Roche is simply inapposite at this, the pleading stage.

Accordingly, the motions are denied in part and this consolidated action will proceed with respect to the plaintiffs' common law negligence claims.

### H. Fraud

In Count VI of the Chan I complaint, Count IV of the Chan II complaint, and Count V of the Sulligan and Delorey complaints, the plaintiffs have asserted claims of actual and constructive fraud against the Lincoln Defendants.

Under Virginia law, "[a] plaintiff asserting a claim of actual fraud must demonstrate (1) a false representation by the defendant, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the misled party, and (6) resulting injury to the party

misled." Carlucci v. Han, 907 F. Supp. 2d 709, 740 (E.D. Va. 2012). "The elements of constructive fraud are identical to that of a claim for actual fraud, except for the intent element. For constructive fraud, a representation need only be made innocently or negligently, rather than intentionally and knowingly." Design & Prod., Inc. v. Am. Exhibitions, Inc., 820 F. Supp. 2d 727, 742 (E.D. Va. 2011). The Fourth Circuit has held that "a complaint which fails to specifically allege the time, place, and nature of the fraud is subject to dismissal." Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990).

The defendants contend that the complaints fail to adequately identify those who made the alleged misrepresentations on their behalf. But in each of these complaints, the plaintiffs have provided the specific dates when and places where the statements were made, and sufficient information about the speakers for the defendants to identify them. References to the "property manager" named "Stephanie" and references to "maintenance personnel," all of whom are alleged to be employees of the defendants, are sufficient, when coupled with the location and time, for the defendants to identify their own employees.

In Chan I and Chan II, the plaintiffs allege two fraudulent statements on July 13, 2011, and July 21, 2011, by maintenance personnel that nothing could be done to repair a water leak originating from a frozen HVAC unit and that the water leak would stop when the HVAC unit finished defrosting. However, "the statement that serves as the foundation for an action in fraud, either actual or constructive, must be a misrepresentation of an existing fact and not the expression of an opinion." Sales, 690 S.E.2d at 94. "The expression of an opinion, however strong and positive

- 21 -

the language may be, is no fraud. . . . Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a [person] is not justified in placing reliance upon them." McMillon v. Dryvit Sys., Inc., 552 S.E.2d 364, 369 (Va. 2001) (quoting Saxby v. S. Land Co., 63 S.E. 423, 424 (1909)) (alteration in original). To the extent that the plaintiffs intend to allege that the maintenance person's statement that the water leak would cease permanently when the HVAC unit finished defrosting, the statement is clearly an expression of opinion as to the future performance of the HVAC unit, rather than a misrepresentation of existing fact. Furthermore, based on the allegations of the complaint—even when viewed in the light most favorable to the plaintiffs—it is also clear that the plaintiffs did not reasonably rely on either of these statements, as the water leak was known to the plaintiffs and whether the HVAC unit could be repaired to prevent it from freezing in the future was immaterial to the known water intrusion.

In Sulligan, the plaintiffs allege that maintenance personnel, after repairing a chronically leaky faucet, told the plaintiffs that a persistent "mildew" odor in the bathroom was from "glue" around the toilet base that smells when wet, or from the plaintiffs' dogs urinating on the bathroom floor. Based on the allegations of the complaint, viewed in the light most favorable to the plaintiffs, it is nevertheless clear that the plaintiffs did not reasonably rely on either of these statements, as the "mildewy" odor persisted despite the faucet repair, and the plaintiffs knew that their dogs did not urinate on the bathroom floor because they kept the door closed because of their small children. The plaintiffs also allege that the property manager, known to the Sulligan plaintiffs as "Stephanie," told

- 22 -

one of the plaintiffs upon completion of mold remediation efforts that "you don't have anything to worry about, your home is safe," but as the plaintiffs acknowledge, she was wearing a protective mask, and the very next day, a mold inspection revealed the continued presence of visible and airborne mold contamination. Again, based on the allegations of the complaint, viewed in the light most favorable to the plaintiffs, it is clear that the plaintiffs did not reasonably rely on the property manager's statement.

In Delorey, the plaintiffs allege that they were told by maintenance personnel shortly after moving in that certain floor stains were "probably from an earlier refrigerator or dishwasher leak." This statement, qualified with the word "probably," is clearly conjecture and opinion, rather than a misrepresentation of existing fact. A subsequent statement that a different stain had been "cleaned up" and thus was "nothing to worry about," is likewise a clear expression of opinion. Based on these allegations, viewed in the light most favorable to the plaintiffs, it is clear that the Delorey plaintiffs have established neither that the alleged statements were representations of an existing fact, nor the requisite reasonable reliance upon the alleged statements.

Accordingly, the motions are granted in part and the plaintiffs' fraud claims dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court orders the following:

1. The defendants' various motions to dismiss and for judgment on the pleadings are **GRANTED in part and DENIED in part**.

2. To the extent the Federico I motion (Case No. 2:12cv80, ECF No. 6) seeks to dismiss

Counts III, IV, and V of the <u>Federico I</u> complaint (Case No. 2:12cv80, ECF No. 1 attach. 1) for lack of subject matter jurisdiction, the motion is **DENIED without prejudice** to raising the defense of derivative governmental immunity again in later proceedings.

3. To the extent the <u>Federico I</u>, <u>Chan I</u>, <u>Brandsema</u>, <u>Sulligan</u>, and <u>Delorey</u> motions (Case No. 2:12cv80, ECF Nos. 6, 79, 83; Case No. 2:13cv294, ECF No. 6; Case No. 2:13cv359, ECF No. 5) seek to dismiss the plaintiffs' VRLTA claims, the motions are **GRANTED** and Count I of the <u>Federico I</u>, <u>Chan I</u>, <u>Brandsema</u>, <u>Sulligan</u>, and <u>Delorey</u> complaints (Case No. 2:12cv80, ECF Nos. 1 attach. 1; Case No. 2:12cv580, ECF No. 1 attach. 1; Case No. 2:12cv582, ECF No. 1 attach. 1; Case No. 2:13cv294, ECF No. 1 attach. 1; Case No. 2:13cv359, ECF No. 11) are **DISMISSED** to the extent they seek damages for personal injury, and the motions are **DENIED** with respect to recovery of damages available pursuant to Va. Code §§ 55-248.13, -248.21, and -248.40, reimbursement of any temporary lodging expenses and any mold remediation costs incurred by the plaintiffs available pursuant to Va. Code §§ 8.01-226.12 and 55-248.18:2, and reasonable attorney fees incurred by the plaintiffs under their VRLTA claims, pursuant to Va. Code § 55-248.21, unless the defendants can show that their alleged actions were reasonable under the circumstances.

4. To the extent the <u>Federico I</u>, <u>Chan I</u>, <u>Brandsema</u>, <u>Sulligan</u>, and <u>Delorey</u> motions (Case No. 2:12cv80, ECF Nos. 6, 79, 83; Case No. 2:13cv294, ECF No. 6; Case No. 2:13cv359, ECF No. 5) seek to dismiss the plaintiffs' breach of contract claims, the motions are **DENIED**.

5. To the extent the <u>Federico I</u> and <u>Sulligan</u> motions (Case No. 2:12cv80, ECF No. 6; Case No. 2:13cv294, ECF No. 6) seek to dismiss the plaintiffs' negligence per se claims based on the

VRLTA, the motions are **GRANTED** and Count IV of the <u>Federico I</u> complaint (Case No. 2:12cv80, ECF No. 1 attach. 1) and the second of two counts styled "Count III" in the <u>Sulligan</u> complaint (Case No. 2:13cv294, ECF No. 1 attach. 1) are **DISMISSED**.

6. To the extent the <u>Federico I</u>, <u>Federico II</u>, <u>Chan I</u>, <u>Chan II</u>, <u>Brandsema</u>, <u>Harding</u>, <u>Sulligan</u>, and <u>Delorey</u> motions (Case No. 2:12cv80, ECF Nos. 6, 79, 81, 83; Case No. 2:12cv596, ECF No. 5; Case No. 2:13cv233, ECF No. 8; Case No. 2:13cv294, ECF No. 6; Case No. 2:13cv359, ECF No. 5) seek to dismiss the plaintiffs' negligence per se claims based on the Virginia Maintenance Code, the motions are **DENIED**.

7. To the extent the <u>Federico I</u>, <u>Federico II</u>, <u>Chan I</u>, <u>Chan II</u>, <u>Brandsema</u>, <u>Harding</u>, <u>Sulligan</u>, and <u>Delorey</u> motions (Case No. 2:12cv80, ECF Nos. 6, 79, 81, 83; Case No. 2:12cv596, ECF No. 5; Case No. 2:13cv233, ECF No. 8; Case No. 2:13cv294, ECF No. 6; Case No. 2:13cv359, ECF No. 5) seek to dismiss the plaintiffs' common law negligence claims, the motions are **DENIED**.

8. To the extent the <u>Chan I</u>, <u>Chan II</u>, <u>Sulligan</u>, and <u>Delorey</u> motions (Case No. 2:12cv80, ECF No. 79, 81; Case No. 2:13cv294, ECF No. 6; Case No. 2:13cv359, ECF No. 5) seek to dismiss the plaintiffs' fraud claims, the motions are **GRANTED** and Count VI of the <u>Chan I</u> complaint (Case No. 2:12cv580, ECF No. 1 attach. 1), Count IV of the <u>Chan II</u> complaint (Case No. 2:12cv581, ECF No. 1 attach. 1), and Count V of the <u>Sulligan</u> and <u>Delorey</u> complaints (Case No. 2:13cv294, ECF No. 1 attach. 1; Case No. 2:13cv359, ECF No. 11) are **DISMISSED**.

9. Due to the large number of counts at issue, a chart summarizing the disposition of the various counts at issue on this motion has been attached to this Opinion and Order. Attachment 1. It

- 25 -

is for demonstrative purposes only and should not be understood to replace or alter anything in this Opinion and Order.

10. This consolidated action shall proceed with respect to all remaining claims. A Rule 26(f) Pretrial Order will follow in due course.

11. The Court reiterates that the burden of proof remains with the plaintiffs, except where it has been placed on the defendants. Although plaintiffs have alleged sufficient facts for some of their claims to survive the defendants' motion to dismiss, the Court expresses no opinion as to which allegations will be proven in any later proceedings.

**IT IS SO ORDERED.**

Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

September 25, 2013
Norfolk, Virginia

- 26 -

<u>Attachment 1</u>

<u>Summary of Disposition of Defendants' Rule 12(b) and 12(c) Motions</u>

LD = Lincoln Defendants; NPS = negligence per se; PI = personal injury;
VMC = Virginia Maintenance Code; VRLTA = Virginia Residential Landlord Tenant Act

<u>Federico I</u> (2:12cv80)
I    VRLTA *(dismissed as to PI damages)*
II   Breach of Contract
III  Negligence – LD/Vendor
IV[*]  ~~NPS – VRLTA~~ *(dismissed)*
V    NPS – VMC

<u>Federico II</u> (2:12cv596)
I    Negligence – LD
II   Negligence – Vendor
III  NPS – VMC

<u>Chan I</u> (2:12cv580)
I    VRLTA *(dismissed as to PI damages)*
II   Breach of Contract
III  Negligence – LD
IV   Negligence – Vendor
V    NPS – VMC
VI   ~~Fraud – LD~~ *(dismissed)*

<u>Chan II</u> (2:12cv581)
I    Negligence – LD
II   Negligence – Vendor
III  NPS – VMC
IV   ~~Fraud – LD~~ *(dismissed)*

<u>Brandsema</u> (2:12cv582)
I    VRLTA *(dismissed as to PI damages)*
II   Breach of Contract
III  Negligence – LD
IV   Negligence – Vendor
V    NPS – VMC

<u>Harding</u> (2:13cv233)
I    Negligence – LD/Vendor
II   NPS – VMC
III  ~~Fraud – Vendor~~ *(previously dismissed)*

<u>Sulligan</u> (2:13cv294)
I    VRLTA *(dismissed as to PI damages)*
II   Breach of Contract
III  Negligence – LD
III  ~~NPS – VRLTA~~ *(dismissed)*
IV   NPS – VMC
V    ~~Fraud – LD/Dozier~~ *(dismissed)*

<u>Delorey</u> (2:13cv359)
I    VRLTA *(dismissed as to PI damages)*
II   Breach of Contract
III  Negligence – LD/Vendor
IV   NPS – VMC
V    ~~Fraud – LD/Dozier~~ *(dismissed)*

---

[*] Mis-numbered in complaint as a second
"Count III"